IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA                                                              PLAINTIFF

v.                                 Case No. 4:19-cr-40004

JUAN PABLO GARCIA-ANZURES                                                             DEFENDANT

## ORDER

Before the Court is the Government's Motion and Brief in Support of United States' Appeal of Magistrate Judge's Release Order. ECF No. 17. Defendant has responded. ECF No. 20. The Court finds this matter ripe for consideration.

## BACKGROUND

On February 11, 2019, a criminal complaint was filed in the instant case accusing Defendant of illegal re-entry in violation of 8 U.S.C. § 1326(a). ECF No. 1. A detention hearing was held on February 21, 2019, before the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas. ECF No. 10. Judge Bryant found that pretrial detention was not warranted and released Defendant on an unsecured appearance bond. ECF No. 11. Judge Bryant further issued orders setting various additional conditions of release. ECF Nos. 12, 14.

On March 1, 2019, the Government filed a Petition to Stay Orders of Pre-trial Release. ECF No. 15. On March 5, 2019, Judge Bryant granted the motion, staying his orders granting and setting the conditions of Defendant's pre-trial release until March 25, 2019. ECF No. 19.

The Government filed the instant motion, moving the Court to order that Defendant be held in pre-trial detention on March 4, 2019. ECF No. 17. Defendant has responded and opposes the requested relief. ECF No. 20.

On March 14, 2019, an Indictment was filed against Defendant, alleging violations of 18 U.S.C. § 1546(a) for use of fraudulent residency/citizenship documents, 42 U.S.C. § 408(a)(7)(B) for use of a fraudulent social security number not assigned to him, and 8 U.S.C. § 1326(a) for illegal re-entry. ECF No. 22.

## DISCUSSION

Title 18 U.S.C. § 3142 governs the pre-trial release or detention of a defendant.[1] As stated above, in the instant motion the Government moves for the pre-trial detention of Defendant. The Government's request for pre-trial detention requires a two-step inquiry. *See United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1124 (N.D. Iowa 2018). First, the Court must determine whether the Government has shown by a preponderance of the evidence that it is authorized to seek detention under section 3142(f)(1) or (2). *Id*. Section 3142(f)(2) allows for the Government— or the Court on its own initiative—to move for detention where there is a serious risk that a defendant will flee. The parties do not specifically address the two-step analysis or otherwise argue which subsection of section 3142(f) is applicable, however, upon review of the briefing, it appears the Government contends that Defendant is a flight risk, as contemplated by section 3142(f)(2)(A). Moreover, at the detention hearing Judge Bryant found that "there is a risk of flight in this matter," ECF No. 21, p. 29, and the parties do not appear to oppose this portion of Judge Bryant's findings. Accordingly, the Court finds that section 3142(f)(2)(A) has been satisfied so as to allow the Court to move on to the second step of the analysis on which the parties focus.

The Court now must ask whether any condition or combination of conditions could be imposed to reasonably assure Defendant's appearance at trial. 18 U.S.C. § 3142(e) (stating that a court may only order pre-trial detention upon a finding that "no condition or combination of

---

[1] The present determination of whether Defendant should be held in pre-trial detention will be *de novo*. *United States v. Adipietro*, 773 F. Supp. 1270, 1271 (W.D. Mo. 1991) (citing *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985)).

conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]")[2]; *Villatoro-Ventura*, 330 F. Supp. 3d at 1125. In making this determination, courts must:

> take into account the available information concerning . . . (1) the nature and circumstances of the offense charged . . .; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)-(4).

In the instant motion, the Government asserts that no condition or set of conditions could reasonably assure Defendant's appearance at trial. The Government must show by a preponderance of the evidence that no release condition or conditions will reasonably assure Defendant's appearance. *See United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) ("After reviewing the district court's order, we agree the government met its burden to show by a preponderance of the evidence that no condition or set of conditions would reasonably assure [the defendant's] appearance for trial.").

In support of its position, the Government argues that the weight of the evidence regarding the instant charge of illegal re-entry in violation of 8 U.S.C. § 1326(a)[3] is substantial. The Government further notes that Defendant is an undocumented immigrant who currently has an Immigration and Customs Enforcement ("ICE") detainer lodged against him and has been previously removed from the United States. Accordingly, the Government states that Defendant is "subject to re-removal under" his prior order of removal. Furthermore, the Government notes that

---

[2] Although section 3142(e) speaks of conditions that can reasonably assure appearance *and* individual and community safety, it has been stated that "[a] court may detain a defendant for posing either a risk of flight or presenting a threat to the community; the Government does not need to prove both." *United States v. Stenger*, 536 F. Supp. 2d 1022, 1025 (S.D. Iowa 2008).

[3] As can be seen above, the instant motion was filed before the Indictment was filed which adds additional charges regarding the alleged use of fraudulent residency/citizenship documents and misrepresentations concerning Defendant's use of a social security number. The parties have not sought to amend, supplement, or otherwise present argument related to the additional charges.

3

it introduced evidence at the detention hearing establishing that, in 2017, Defendant was convicted of sexual assault in the fourth degree in the District Court of Howard County, Arkansas, and was ordered to register as a sex offender. However, the Government asserts that Defendant has never registered as a sex offender.

The Government also states that on January 29, 2019, approximately nine months after his deportation, Defendant was stopped by an Arkansas State Trooper. The trooper's report was admitted into evidence at the detention hearing. In the report, the trooper states that Defendant initially denied being a sex offender and denied that he had been previously deported. The Government argues that this evidence cumulatively shows that Defendant has shown himself to be "indifferent to the law and court orders" and that, accordingly, no conditions of release would reasonably assure his appearance.

In response, Defendant asserts that the Government cannot ask the Court to consider removability of Defendant under relevant immigration laws as such an argument "ignores the fact that the executive branch controls both the continuing prosecution of this case as well as the ability to remove [Defendant] if he is found to be in the country unlawfully." ECF No. 20, p. 3. Defendant further states that "[t]he Government cannot assert that [Defendant] presents a flight risk because it is the Government who is causing his removal, and therefore, this risk of flight." *Id*. Defendant likewise asserts that should the Court not deny the instant motion on its face, it should hold a hearing wherein the parties can present their positions.[4] Defendant states that there are various facts the Court should be made aware of before ruling on this issue such as:

> [Defendant's] graduation of high school in Nashville, Arkansas; his presence in the United States for many years under the protection of Deferred Action for Childhood

---

[4] The Court finds that there is no need for a hearing on the present motion. Upon review of the record, including the transcript of the detention hearing and the exhibits admitted into evidence by Judge Bryant at that hearing, the Court finds that it is sufficiently apprised of the relevant facts to properly consider and rule on the present motion. Accordingly, Defendant's request for a hearing is denied.

Arrivals (DACA); his compliance with the reporting requirements of DACA for several years, his ability to work with DACA status in the United States; that his sentence for 4th degree sexual assault was a fine of $700.00; and that his wife and infant child are American citizens.

*Id*. at 4.

Having noted the parties' positions, the Court will now turn to the factors for consideration outlined in section 3142(g).

## I. The Nature and Circumstances of the Offense Charged

To begin, the Court turns to the first factor outlined in section 3142(g), namely, the nature and circumstances of the offense charged. At the time of the detention hearing, Defendant was charged with illegal re-entry. Since that time, Defendant has been charged—by indictment—with additional crimes concerning his alleged misrepresentation that a specific social security number was assigned to him and the alleged use of falsified residency/citizenship documents. Although the Court certainly recognizes the gravity of these charges, the Court also notes that they are not the most egregious federal crimes and involve neither violence nor controlled substances. Upon consideration, the Court finds that this factor weighs in favor of pre-trial release.

## II. Weight of the Evidence Against Defendant

Moving on to the second factor—the weight of the evidence against Defendant—the Court notes that, based on the record, it appears that the weight of the evidence that will be used to prove Defendant's guilt of illegal re-entry[5] appears to be significant. At the detention hearing the Court admitted various exhibits offered by the Government that show Defendant has been deported once before. *See* ECF No. 21, p. 3. Likewise, the Court admitted records offered by Defendant pertaining to his pursuit of DACA benefits. *See* ECF No. 21, p. 5. Moreover, defense counsel indicated Defendant had DACA status at one point in time, thereby suggesting that he is in fact an

---

[5] The Court presently has no evidence before it concerning Defendant's other charges. Accordingly, it is unable to meaningfully consider the weight of any such evidence the Government may posses.

undocumented immigrant. *See* ECF No. 21, p. 10. Taken together, the evidence appears to clearly show that Defendant is an undocumented immigrant that is present in the United States after having previously been deported. Accordingly, this factor weighs in favor of detaining Defendant.

### III. Defendant's History and Characteristics

Turning to the third factor—Defendant's history and characteristics—the Court notes that section 3142 includes various issues courts may consider in evaluation of this factor, namely:

> the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . . whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law[.]

18 U.S.C. § 3142(g)(3)(A)-(B). To begin, the Court notes that Defendant's family and community ties appear to be centered around southwest Arkansas, and Bowie County, Texas. Specifically, it is undisputed that Defendant graduated from high school in Nashville, Arkansas, and lived there from a young age. Likewise, at the detention hearing, defense counsel stated that Defendant's extended family continues to reside in the Nashville area. Furthermore, it is undisputed that Defendant's wife and minor child reside in the Texarkana area.[6] Moreover, there is no indication that Defendant suffers from any kind of substance dependency, or that he suffers any physical or mental ailments.

The Court, however, is cognizant of Defendant's previous conviction in state court for sexual assault, fourth degree. Although this is certainly not a minor offense, the Court recognizes that Defendant served no prison time for the offense and instead was subjected to a relatively minor

---

[6] At the detention hearing, the Government noted that Defendant had previously told a state trooper that he lived in Nash, Texas—a community that lies in close proximity to Texarkana, Texas. Accordingly, the Government was concerned about the Texarkana, Texas, address Defendant provided as his residence if allowed pre-trial release, stating that it was unsure if the proffered address actually exists. However, regardless of the exact location of Defendant's family residence, there appears to be no dispute that Defendant's wife and child reside either in Texarkana or in close proximity to Texarkana.

fine of $700.00 and ordered to register as a sex offender. The Court is troubled by the fact that Defendant failed to comply with the requirement that he register as a sex offender, but the record does not reflect that he otherwise tried to avoid punishment or failed to appear in the state court proceedings. The Court is, likewise, troubled by the evidence which suggests that Defendant lied to a state trooper when he was involved in a traffic stop. Although his precise motives for allegedly lying are undetermined, such dishonesty certainly weighs in favor of detention. That being said, the Court also notes that there is no indication Defendant failed to appear or avoided prosecution in his immigration proceedings which led to his previous deportation.

As for employment, the record reflects that Defendant has worked unlawfully in the past, as he is legally unable to work under his present undocumented status. Further, as he lacks legal status, he would be unable to work if released from detention, or otherwise find it necessary to again work illegally. That being said, it appears that Defendant's wife maintains stable employment and that, if released, he would be supported by his wife.

The Court now turns to the issue of how the likelihood of Defendant's deportation prior to trial should be weighed in the present analysis. "A number of courts have held that the 'risk of flight' that triggers the option of detention must be a risk of *volitional* flight." *Villatoro-Ventura*, 330 F. Supp. 3d at 1125 (footnote collecting cases omitted)(emphasis in original). Other courts, however, "have concluded . . . that the primary concern is 'whether there are any conditions or combination of conditions that can reasonably assure the defendant's appearance as required,' even if the defendant's nonappearance will be due to Governmental actions beyond the defendant's control." *Id*. at 1125-26 (footnote collecting cases omitted). Upon review, the Court notes that although an undocumented defendant may be subject to deportation under the relevant sections of the Immigration and Nationality Act ("INA"), such deportation—and the timeline of any possible deportation—is not guaranteed. *See id*. at 1128-1131 (discussing various provisions of the INA

and noting that although they may appear to require deportation in certain cases, deportation is not always guaranteed and, despite a re-instated removal order, an undocumented defendant may still be entitled to various forms of affirmative immigration relief). Furthermore, the Court notes that the INA gives ICE significant discretion in whether—and how quickly—to seek removal of an undocumented immigrant. *See, e.g.*, *id*. at 1130 ("ICE has the discretion to stay removal if it decides that 'the alien is needed to testify in the prosecution of a person for a violation of a law of the United States or of any State.'").

Upon consideration, the Court finds, as the court in *Villatoro-Ventura* did, that the question of whether Defendant should be detained pending trial must be resolved pursuant to the relevant portions of section 3142 "without regard to whether the Executive Branch might remove him from the country if he is released." *Id*. at 1135. Accordingly, the fact that Defendant may be deported during the pendency of the instant federal prosecution is neutral in the present analysis of whether he should be held in pre-trial detention or, alternatively, released.

Upon review of the salient facts and, taking the record as a whole, the Court finds that this factor ultimately weighs in favor of pre-trial release.

**IV.    The Nature and Seriousness of the Danger to any Person or the Community that Would be Posed by the Defendant's Release**

Finally, turning to the fourth factor—the nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release—the Court again notes Defendant's past conviction for sexual assault, fourth degree. Aside from Defendant's deportation and the current proceedings, this sexual assault conviction appears to be Defendant's only involvement with the criminal justice system. Although the Court recognizes the weight of this conviction, Defendant's history does not otherwise suggest that he presents a danger to any individual or the wider community. Furthermore, the Court is satisfied that conditions of release

8

can be imposed to lessen any potential danger of Defendant's release. Therefore, the Court finds that this fourth and final factor weighs in favor of pre-trial release.

## CONCLUSION

For the foregoing reasons, the Court finds that the Judge Bryant's ruling should be and hereby is **AFFIRMED**. Accordingly, Defendant shall be released subject to the conditions previously imposed by Judge Bryant. The stay of Judge Bryant's orders is hereby **LIFTED**.

**IT IS SO ORDERED**, this 21st day of March, 2019.

> /s/ Susan O. Hickey
> Susan O. Hickey
> Chief United States District Judge