IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA                                                    PLAINTIFF

vs.                              Criminal No. 4:19-cr-40004

JUAN PABLO GARCIA-ANZURES                                                   DEFENDANT

## ORDER

On April 3, 2019, the Defendant appeared for arraignment on the Indictment (ECF No. 22) pending in this case. In addition to arraignment, also before the Court is the Defendant's Motion for Reconsideration of the Court's Order to produce the Defendant for arraignment. ECF No. 31. The Motion for Reconsideration as been referred to the undersigned for decision. ECF No. 32. Prior to the arraignment the Court conducted a hearing on the Motion. ECF No. 33. For the reasons stated below, the Court **DENIES** the Defendant's Motion for Reconsideration.

**1. Background**:

On February 11, 2019, Defendant was charged by Criminal Complaint with illegal re-entry into the United States by a person previously deported. ECF No. 1. He appeared for an initial appearance on February 19, 2019. ECF No. 5. The Federal Defender was appointed to represent Defendant. ECF No. 7. The Government moved to Detain Defendant pending trial. ECF No. 8. Defendant was temporarily detained pending a hearing. ECF No. 9. On February 21, 2019, a hearing was held regarding the issue of pre-trial detention. ECF No. 10. Following the hearing, the Court determined the Defendant should be released pending trial and Ordered he be released on conditions. ECF No. 12. Pursuant to 18 U.S.C. § 3142(d)(1)(B), the Order setting conditions of

release included a ten (10) day stay to allow the Government to determine if it would deport Defendant. ECF No. 12, p. 2.

On February 21, 2019, Defendant was remanded to the custody of the U.S. Marshal for a period not to exceed 10 days (excluding Saturdays, Sundays and holidays). On March 1, 2019, the Government filed its Motion to Stay Orders of Pretrial Release (ECF No. 15), in order to allow it to seek review of the Order of Release. On March 5, 2019, the Motion to Stay was granted allowing the Government up to and including March 25, 2019. ECF No. 19. Defendant was ordered to remain in the custody of the U.S. Marshal until that date.[1]

On March 4, 2019, the Government filed its Motion asking the District Judge to review the decision of the undersigned in granting Defendant pre-trial release. ECF No. 17. The Defendant filed his response on March 8, 2019. ECF No. 20. On March 21, 2019, Chief United States District Judge Susan O. Hickey affirmed the decision of the undersigned and ordered "Defendant shall be released subject to the conditions previously imposed by Judge Bryant." ECF No. 26, p. 9.

On or about March 22, 2019, ICE again took administrative custody of Defendant. He was subsequently transferred to the ICE facility in Jena, Louisiana, for purposes of removal from the United States pursuant to a re-instated order of removal under the Immigration and Naturalization Act (INA).

In the interim period of time, on March 14, 2019, Defendant was indicted. ECF No. 22. In the Indictment, Defendant was charged with (1) use or possession of a counterfeit United States

---

[1] In a telephone conference with Counsel on or about March 4, 2019, before the Court Ruled on the Motion to Stay, the Court was informed Defendant had been administratively transferred from the custody of the U.S. Marshal to the Custody of Immigration and Customs Enforcement ("ICE"). The Court orally directed counsel for the Government that custody be administratively transferred back to the U.S. Marshal until such time as the pending Motions and issues were resolved. Defendant was administratively placed back in the custody of the U.S. Marshal on the same day.

Permanent Resident Card and a counterfeit Social Security Card; (2) falsely representing a Social Security Number had been assigned to him; and (3) illegal re-entry into the United States after a prior deportation. Counts One and Two are new criminal charges against this Defendant. On March 28, 2019, the Court entered its Order directing the Government to produce Defendant for an Arraignment on the Indictment on April 3, 2019. ECF No. 28. On April 2, 2019, Defendant filed his Motion for Reconsideration of the Order directing the Government to produce Defendant for Arraignment. ECF No. 31.

2. **Discussion**:

With his Motion for Reconsideration, the Defendant asks the Court to rescind it Order directing the Government to produce Defendant for arraignment.

The Bail Reform Act ("BRA") clearly contemplates a situation such as the present one, where a person not legally in the United States is granted pre-trial release in a criminal matter. Specifically 18 U.S.C. § 3142 (d) provides in part:

> **(d) Temporary detention to permit revocation of conditional release, deportation, or exclusion**.--If the judicial officer determines that–
>
> (1) such person–
>
> (B) is not a citizen of the United States or lawfully admitted for permanent residence, as defined in section 101(a)(20) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(20)); and
>
> (2) such person may flee or pose a danger to any other person or the community;
>
> such judicial officer shall order the detention of such person, for a period of not more than ten days, excluding Saturdays, Sundays, and holidays, and direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service. If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the

> applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings. If temporary detention is sought under paragraph (1)(B) of this subsection, such person has the burden of proving to the court such person's United States citizenship or lawful admission for permanent residence.

The INA provides in pertinent part:

> If [ICE] finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5). When an alien is subject to removal he shall be removed from the United States "within a period of 90 days (in this section referred to as the "removal period"). 8 U.S.C.A. § 1231(a)(1)(A). The "removal period" shall start the date the alien is released from any other confinement. 8 U.S.C.A. § 1231(a)(1)(A)(iii). Further, during the "removal period" the INA directs that ICE "shall detain the alien." 8 U.S.C.A. § 1231(a)(2).

Defendant asserts the Government must "choose a path" for persons such as Defendant, either proceed with deportation or criminal prosecution. Essentially, the Defendant is demanding the Government elect its remedy, either deportation or criminal prosecution. There appear to be no United States Supreme Court or Eighth Circuit Court of Appeals decisions addressing this issue.

In support of this proposition Defendant cites the very recent case *United States v. Vasquez-Benitez*, ___ F.3d ____, 2019 WL 1339449 (D.C. Cir. Mar. 26, 2019). In *Vasquez-Benitez*, the Defendant was an alien impermissibly in the United States, having been previously deported. Both criminal and civil removal proceedings were initiated. The district court held: "(1) that it is unnecessary to detain Vasquez-Benitez in order to ensure his presence at his criminal trial and (2) that its ruling releasing him pre-trial means ICE cannot civilly detain Vasquez-Benitez in order to

remove him from the country." *Vasquez-Benitez*, 2019 WL 1339449 *1. On appeal, the D.C. Circuit Court first upheld the district court ruling granting Vasquez-Benitez pretrial release under the BRA. *See id* at *4. Turning to the question of whether ICE could still detain Vasquez-Benitez civilly for removal purposes the D.C. Circuit held:

> [T]he Department of Homeland Security's detention of a criminal defendant alien for the purpose of removal does not infringe on the judiciary's role in criminal proceedings. Detention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities. . . . So long as ICE detains the alien for the permissible purpose of effectuating his removal and not to 'skirt [the] Court's decision [in] setting the terms of [his] release under the BRA,' . . . ICE's detention does not offend separation-of-powers principles simply because a federal court, acting pursuant to the BRA, has ordered that same alien released pending his criminal trial. Thus, we see no constitutional conflict of the kind articulated by the district court.

*See id* at *4.

Further, at least one other Circuit Court has addressed this precise issue. The Sixth Circuit, in *United States v. Veloz-Alonso*, 910 F.3d 266 (6th Cir. 2018) was faced with essentially the same facts. Veloz-Alonso pled guilty to illegally reentering the United States. Following his guilty plea, the district court granted him release pending sentencing. Finding a conflict between the BRA and the INA, the district court also entered an order prohibiting ICE from detaining or removing Veloz-Alonso pending sentencing. The Government appealed this ruling. The Sixth Circuit finding that the issue had "never been directly addressed by our sister circuits or the Supreme Court" first reviewed the district court cases that addressed the issue:

> Several district courts around the country have found, as the district court here did, that the BRA and INA pose a conflict. "This issue arises in the collision between the Immigration and Naturalization Act and the Bail Reform Act." The preeminent case standing for this proposition is *United States v. Trujillo-Alvarez*, 900 F.Supp.2d 1167 (D. Or. 2012). *Trujillo-Alvarez* (internal citations omitted) and similar cases find that when the government has detained an illegal alien, '[T]he Executive has

-5-

a choice to make. It may take an alien into custody for the purpose of removing or deporting that individual or it may temporarily decline to do so while criminal proceedings are maintained against that person.'

*Veloz-Alonso*, 910 F.3d at 268. The Sixth Circuit, as the D.C. Circuit did in *Vasquez-Benitez,* declined to adopt this position. Rather it held:

> [W]e find no conflict between the BRA and INA in the manner which the *Trujillo-Alvarez* cases and the district court here ruled. The BRA presumes detention but allows for the permissive release of a criminal defendant. The INA mandates the detention of certain illegal aliens. Reading the BRA's permissive use of release to supersede the INA's mandatory detention does not follow logically nor would doing so be congruent with our canons of statutory interpretation. One of the primary purposes of the BRA is to ensure the appearance of criminal defendants at judicial proceedings. To the extent that ICE may fulfill its statutory mandates without impairing that purpose of the BRA, there is no statutory conflict and the district court may not enjoin the government's agents.

910 F.3d at 270 (emphasis added).

Finally, the U.S. District Court for the Northern District of Iowa has issued a well reasoned opinion on the exact issue presented in this case. *See United States v. Pacheco-Poo*, 2018 WL 6310270 (N.D. Iowa, Dec. 3 2018). Without repeating the analysis in the *Pancheco-Poo* case, I agree with the conclusion that "no language in the INA . . . subordinates [the authority to detain and remove illegal aliens] to the BRA." *Id*. at *5 (citations omitted).

A close reading of 18 U.S.C. § 3142(d) lends more credence to the foregoing proposition. Under §3142(d), the court must stay any release order for a period of ten (10) days to allow for the deportation of a person not lawfully in the United States. This provision, on its face, presumes that the government may proceed on parallel tracks in both criminal proceedings against an alien and in a removal proceeding against him at the same time. Under that section, if ICE chooses to detain an alien within the ten-day period of temporary detention, then the ICE detention has the effect of removing from the court the need to determine whether to release the defendant in the criminal case

pursuant to the other provisions under the BRA.  Importantly, that section does not go on to say that the criminal case must end if ICE detains the alien and pursues deportation.

Neither the INA nor the BRA, on their face, subordinate one statute to the other.  The Executive Branch can proceed against an alien on parallel administrative and criminal tracks.  Clearly, ICE is permitted to detain Defendant in this case for purposes of removal pursuant to the INA.  So long as ICE detains the Defendant for permissible purposes under the INA, and not as a pretext of some sort to "skirt" or thwart this Court's decision in setting terms of his release under the BRA, the civil detention by ICE does not infringe on this Court's broad supervisory authority over criminal cases pending before it.  *See*, *Vasquez-Benitez*, 2019 WL 1339449 *4.  Further, this Court has the authority to direct the production of a defendant held in custody by a Federal agency for purposes of a criminal proceeding. Accordingly, Defendant's Motion for Reconsideration (ECF No. 31) is **DENIED**.

**SO ORDERED this 3rd day of April 2019.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE